```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

----------------------------------X
UNITED STATES OF AMERICA          :
                                  :
                                  :
          v.                      :    NO. 3:06CR161 (EBB)
                                  :
PAUL GALIETTI,                    :
                                  :
          Defendant.              :
----------------------------------X

<u>RULING ON DEFENDANT'S MOTION FOR SEVERANCE [DOC. NO. 1089]</u>

<u>INTRODUCTION</u>

Before the Court is defendant Paul Galietti's Motion for Severance. Defendant Galietti seeks, pursuant to Federal Rules of Criminal Procedure 8 and 14, to be tried separately from his codefendants in this multi-defendant, multi-count criminal case. For the following reasons, the motion is DENIED.

<u>BACKGROUND</u>

The charges in this case followed an investigation by law enforcement officials into a number of garbage hauling, or "carting," companies in the Danbury, Connecticut area. On June 12, 2007, a superseding indictment was returned naming 19 defendants, both individuals and corporations, and containing 108 separate counts. The racketeering [or "RICO"] charges in the indictment stem from the activities of an alleged enterprise constituted by certain of the defendants. (Superseding Indictment ¶ 12.) One of the alleged purposes of this enterprise was the establishment and

1

enforcement of an unlawful "property rights" system which was used to control the carting market by preventing competitive bidding for carting services. (Id. ¶¶ 3-11.)

The defendants alleged to have been part of the enterprise [hereinafter the "racketeering" or "RICO" defendants] are charged with having violated the federal racketeering statute, 18 U.S.C. § 1962, and with having conspired to violate that statute. (Superseding Indictment ¶¶ 3-70.) The alleged predicate acts underlying the racketeering counts include extortion, arson, kidnapping, mail and wire fraud, witness tampering, and bribery of a law enforcement official. (Id.) Many of the these predicate acts are also charged as separate counts in the indictment. (Id. ¶¶ 71-113.) The indictment also alleges a number of wire fraud offenses related to the operation of a hockey team by some of the defendants, (id. ¶¶ 114-180), as well as tax offenses alleged to have been committed by some of the defendants, (id. ¶¶ 181-321.)

It is not alleged that defendant Galietti was part of the enterprise and he is not charged in any of the racketeering counts. Nor is he charged in any of the counts separately charging the racketeering predicate acts as substantive offenses. Galietti, who is a Connecticut State Trooper, is charged in Counts 72 and 73 with misuse of a computer in violation of 18 U.S.C. §§ 1030(a)(2)(C) and (c)(2)(B)(ii). (Superseding Indictment ¶¶ 111, 112.) It is alleged that on two occasions Trooper Galietti used a state police

2

computer to obtain vehicle registration information "in furtherance of a criminal act in violation of the constitution or the laws of the United States or of any State." (Id.)  The government claims that it intends to prove at trial that Trooper Galietti used a police computer on these two occasions to access the National Crime Information Center database in order to obtain information for his cousin, defendant Richard Galietti, who is alleged to have been part of the enterprise and who is charged in the racketeering counts.  (Government's Mem. at 3.)  The government claims that Trooper Paul Galietti provided this information to his cousin while fully understanding that his cousin and other codefendants were engaged in efforts to enforce the unlawful "property rights" system by harassing rival carters.  (Id.)  The government claims that Paul Galietti also volunteered to use law enforcement resources on other occasions to interfere with the enterprise's competitors.  (Id. at 3-4, 6-7.)

In Count 72, Paul Galietti is alleged to have used a police computer at the request of his cousin on September 9, 2004. (Superseding Indictment ¶ 111, Government's Mem. at 7.)  The government claims that Paul Galietti, at the request of Richard Galietti, ran a check on a Connecticut vehicle registration belonging to the spouse of the owner of a carting company which had failed to comply with the property rights system. (Government's Mem. at 7.)

3

In Court 73, the government alleges that, on January 10, 2005, Paul Galietti again used the computer in his police cruiser to check on a vehicle registration after Richard Galietti provided him with the license plate number of the vehicle. (Superseding Indictment ¶ 112, Government's Mem. at 6.) The government claims that Richard Galietti asked his cousin to run a check on the registration after Richard learned that the owner of a rival carting company had been seen entering the vehicle. (Government's Mem. at 6.) The members of the enterprise had allegedly been conspiring to extort this rival company and Richard Galietti was concerned that the owner of the company might be in contact with law enforcement. (Id.) Paul Galietti allegedly ran the registration in order to determine whether the vehicle was being used by law enforcement officials. (Id.) The government claims that Paul Galietti was aware of his cousin's efforts to harass this rival carter. The government claims, for example, that Richard and Paul Galietti discussed arranging for the state police truck squad to target this competitor's trucks. (Id. at 4-5.) As predicate acts for the RICO count, Richard Galietti and other racketeering defendants are alleged to have bribed Paul Galietti for the assistance he provided to the enterprise. (Superseding Indictment ¶¶ 61-67.)

DISCUSSION

An "indictment or information may charge 2 or more defendants

4

if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). Even when defendants are properly indicted together under Rule 8(b), there are instances in which a joint trial would prejudice one defendant or the government. Zafiro v. United States, 506 U.S. 534, 537-38 (1993). In recognition of the possibility of this sort of prejudice, Federal Rule of Criminal Procedure 14(a) provides that "[i]f the joinder of ... defendants ... appears to prejudice a defendant or the government, the court may ... sever the defendants' trials, or provide any other relief that justice requires."

A. Joinder Under Rule 8

Paul Galietti has moved for a severance pursuant to Rule 8, which governs proper joinder of counts and defendants in an indictment. Whether joinder is proper is a question of law that depends on the allegations in the indictment. United States v. Gallo, 668 F. Supp. 736, 748 (E.D.N.Y. 1987) (citing Schaffer v. United States, 362 U.S. 511, 513-14 (1960)). The Rule 8(b) requirement that joined defendants "have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses" should be "read ... to mean that the acts must be 'unified by some substantial identity of facts or participants,' or 'arise out of a common plan or scheme.'"

5

United States v. Attanasio, 870 F.2d 809, 815 (2d Cir. 1989) (quoting United States v. Porter, 821 F.2d 968, 972 (4th Cir. 1987)).

When an indictment alleges a pattern of acts as a violation of the RICO statute, those predicate acts are also properly charged as separate counts in the indictment. United States v. Rastelli, 653 F .Supp. 1034, 1041-44 (E.D.N.Y. 1986) (citing United States v. Tashjian, 660 F.2d 829, 833 (1st Cir. 1981), cert. denied, 454 U.S. 1102 (1981)); see also United States v. Weisman, 624 F.2d 1118, 1129 (2d Cir. 1980). Moreover, defendants who are charged only in the counts separately charging the predicate racketeering acts, and who are not charged in the racketeering counts, are properly joined under Rule 8. Weisman, 624 F.2d 1129; see also United States v. Castellano, 610 F. Supp. 1359, 1398 (D.C.N.Y. 1985) (citing United States v. Barton, 647 F.2d 224, 240 (2d Cir. 1981)). However, defendant Paul Galietti's connection to the racketeering counts is slightly more attenuated than this because the counts with which he is charged are not themselves predicate acts for the racketeering charges. Nonetheless, the two counts charging Galietti are closely related to the racketeering charges since the indictment alleges as predicate acts for the RICO count that the RICO defendants bribed Trooper Galietti to access law enforcement computer databases. (Superseding Indictment ¶¶ 61-67.)

The Second Circuit approved of a similar joinder in United

6

States v. Cervone, 907 F.2d 332, 340-41 (2d Cir. 1990). In Cervone, a case involving eighteen defendants and a 102-count indictment charging assorted crimes both as predicate acts in RICO counts and as separate counts, a defendant argued that he had been improperly joined because he had not been charged in the RICO counts or in any of the counts charging the RICO predicate acts separately. Id. at 341. The defendant was charged only with one count of making false statements to a law enforcement official and one count of accepting a bribe from one of his codefendants who was charged in the RICO counts. Id. at 338-39, 341. This RICO codefendant was charged in another count with having accepted the bribe. Id. at 341. Id. The Second Circuit held that "the counts do concern common defendants and a common scheme involving a single labor bribe, so that joinder ... did not run afoul of Rule 8(b)." Id.

Applying this reasoning to the present case, it is clear that the counts charging Paul Galietti are properly joined. Just as in Cervone, the indictment charges both the giver and the recipient of bribes. The RICO defendants are charged with bribing Trooper Galietti, who is charged with performing the act for which he was bribed in furtherance of the RICO enterprise's purposes. The counts charging Galietti with misuse of a police computer and the count charging the RICO defendants with bribing him to misuse the computer "concern common defendants and a common scheme." Galietti

7

and the RICO defendants are alleged to have "participated in the same series of acts or transactions, constituting an offense or offenses" within the meaning of Rule 8. See also United States v. Locascio, 357 F. Supp. 2d 536, 541-42 (E.D.N.Y. 2004) (applying reasoning from Cervone and allowing joinder of a defendant who was not charged in the indictment's RICO counts or in any of the separately charged underlying RICO acts).

B.  Severance Under Rule 14

"There is a preference in the federal system for joint trials of defendants who are indicted together." Zafiro, 506 U.S. at 537 (1993). Severance is not required even if some prejudice to a defendant would result from a joint trial. United States v. Beverly, 5 F.3d 633, 638 (2d Cir. 1993) (citing Zafiro, 506 U.S. at 539). "[I]t is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." Id. at 540 (citations omitted). Instead, a court should exercise its discretion under Federal Rule of Criminal Procedure 14 to grant separate trials "only if there is a *serious* risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id., 506 U.S. at 539 (emphasis added); see also United States v. Turoff, 853 F.2d 1037, 1043 (2d Cir. 1988) ("substantial prejudice must be shown before severing trials under Rule 14"). When a party demonstrates potential

8

prejudice, severance can often be avoided since "less drastic measures, such as limiting instructions, will often suffice to cure any risk of prejudice." Zafiro, 506 U.S. at 539 (citing Richardson v. Marsh, 481 U.S. 200, 211 (1987)).

Galietti argues first that severance is warranted because he claims that were he to be tried jointly with the RICO defendants he would suffer prejudicial "spillover" from evidence offered to prove the RICO counts. (Defendant's Mem at 4-6.) The Court notes that, as "[a] defendant raising a claim of prejudicial spillover," Galietti "bears an extremely heavy burden" of showing that the jury would be prevented from making a reliable judgment. See United States v. Friedman, 854 F.2d 535, 563 (2d Cir. 1988); see also United States v. Megale, 363 F. Supp. 2d 359, 367 (D. Conn. 2005).

Galietti argues that the reasoning of United States v. DiNome, 54 F.2d 839 (2d Cir. 1992), demonstrates that severance is appropriate in this case. In DiNome, twenty-four defendants were charged in a seventy-eight count indictment alleging RICO violations and numerous other assorted illegal activities related to organized crime. Two defendants, Wayne and Judith Hellman, were charged with bribery as part of a RICO count as well as mail and wire fraud counts. Id. at 844. They were tried together with the defendants alleged to have been involved in the RICO enterprise. Id. The government claimed that Judith Hellman had accepted a bribe when she was a juror on the state murder trial of one of the

9

RICO codefendants and that the Hellmans had committed mail and wire fraud when they attempted to obtain home and vehicle loans with the proceeds of the bribe. Id. Near the end of the trial, the Hellmans successfully moved for a judgment of acquittal on the RICO bribery counts. Id. After the court denied their motion for a mistrial on the remaining counts, the Hellmans were convicted of mail and wire fraud. Id. The Second Circuit reversed the Hellmans' convictions, holding that the trial court should have granted their motion for a mistrial on the mail and wire fraud counts because of the prejudicial effect of evidence offered against the RICO codefendants that would have been inadmissible as to the Hellmans' mail and wire fraud counts. Id. at 844-45.

In DiNome, the prejudice the Hellmans suffered was a result of the admission of evidence offered to prove RICO charges which included "vicious murders, loansharking, auto theft, pornography, and firearms trafficking." Id. at 844. Once the RICO bribery charges against the Hellmans had been dismissed, this evidence "was then irrelevant yet highly prejudicial in the context of the remaining mail and wire fraud charges." Id. (citing Fed. R. Evid. 403). The Second Circuit held that the Hellmans should have been tried separately at this point because "all but an infinitesimal fraction of the evidence at [the] sixteen-month trial lost any relevance to the mail and wire fraud charges against them." Id.

Galietti contends that he would similarly be the victim of the

"spillover" prejudicial effect of irrelevant evidence in this trial. However, DiNome is distinguishable. Galietti is incorrect when he argues that "all but an infinitesimal fraction" of the evidence to be offered in this trial would be irrelevant to his charges of misusing a computer. In order to convict Galietti the government must prove that he misused the police computer in "furtherance of [a] criminal or tortious act in violation of the Constitution or laws of the United States or any State." See 18 U.S.C. § 1030(c)(2)(B)(ii). The government claims that Galietti improperly accessed his computer in order to assist his cousin and other codefendants in furthering the goals of their racketeering enterprise and their conspiracy to extort rival carters. Therefore, unlike the prejudicial evidence in DiNome, some evidence of the nature and activities of this enterprise actually is relevant to prove the charges against Galietti.

Moreover, the Court believes that the evidence offered to prove the RICO counts in this case will not be as inflammatory in nature as the evidence of the violent crimes alleged to have been committed by the Hellmans' codefendants in DiNome. Admittedly, the indictment in this case alleges extortion involving the use and threat of physical violence including kidnaping at gunpoint. However, these allegations are a far cry from the "vast array of illegal activities," including "calculated violence" and "brutal murders," alleged in the DiNome trial. See DiNome, 954 F.2d at

11

842.  Therefore, DiNome does not support the defendant's claim that his trial should be severed.

Nor do the other cases Galietti cites in his memorandum support his argument that his trial should be severed due to the risk of spillover prejudice from evidence offered against the RICO defendants.  (See Defendant's Mem. at 6.)  United States v. Cortinas, 142 F.3d 242, 248 (5th Cir. 1998), held that the defendants were prejudiced by evidence of the "violent, criminal activities" of the Bandidos motorcycle gang.  Severance was required because the defendants had ended their involvement in the alleged conspiracy before the Bandidos became involved, and therefore the evidence was highly prejudicial and irrelevant.  In contrast, in the present case, Galietti was allegedly involved in the criminal activities contemporaneously with the RICO defendants, and evidence of their activities is relevant to charges against him.  Furthermore, any evidence that lacks relevance will not be nearly so prejudicial as evidence of the Bandidos' violent acts.  In United States v. Gentile, 495 F.2d 626 (5th Cir. 1974), the government failed at trial to present evidence connecting the defendant to his codefendants' conspiracy, and so the effect of the joint trial was to give the jury the "inaccurate" and irrelevant impression that the defendant was somehow connected with his codefendant's offenses.  In contrast, in the present case, the government's case against Galietti revolves around showing that his

actions *are* connected to those of the racketeering enterprise. Similarly, United States v. Bertolotti, 529 F.2d 149 (2d Cir. 1975), held that there had been an error of variance where the proof at trial showed the existence of four separate conspiracies, not a single conspiracy as alleged. The court found that there was prejudicial spillover because each defendant was "subjected to voluminous testimony relating to unconnected crimes in which he took no part." Id. at 157. The court reasoned that the prejudicial effect of "obviously shocking and inflammatory" irrelevant evidence "about assault, kidnapping, guns and narcotics cannot be underestimated." Id. at 158. This situation is distinguishable from the present case because, as noted above, a certain amount of the evidence offered to prove the RICO activities will be relevant to Galietti's charges and will likely be less inflammatory. Both United States v. Castro, 829 F.2d 1038 (11th Cir. 1987), and United States v. Marionneaux, 514 F.2d 1244 (5th Cir. 1975) are inapplicable to Galietti's prejudicial spillover argument because those cases involved misjoinder under Rule 8, not severance under Rule 14. It is unclear why the defendant cites United States v. Bruun, 809 F.2d 397 (7th Cir. 1987), since the court held, without substantial analysis, that no severance should have been granted.

Even if Galietti is correct in his claims that some of the evidence the government intends to offer at trial is inadmissible

13

against him and may even be somewhat prejudicial to him, he is not necessarily entitled to severance. He must show a "serious risk" from a joint trial that cannot by avoided by less drastic measures, such as limiting instructions. Zafiro 506 U.S. at 539; see also United States v. Werner, 620 F.2d 922, 929 (2d Cir. 1980) (rejecting argument that Rule 14 allows grant of separate trials "simply on a showing of some adverse effect" of a joint trial). He has not shown such a risk because he has not persuaded the Court that the jury will be unable to assess the evidence against him separately from the evidence against his codefendants.

Galietti also argues that severance is appropriate because of the predicted length of the trial of the racketeering counts in this case. (Defendant's Mem. at 6.) He argues that the charges against him could be disposed of in a very short trial which would ameliorate any risk of prejudice. (Id.) This is not grounds for severance. "There is no support in caselaw or in logic for the proposition that a lengthy trial, a large number and variety of charges, and numerous defendants violate due process without a showing that the issues were actually beyond the jury's competence." DiNome, 954 F.2d at 842; see also United States v. Locascio, 6 F.3d 924, 947 (2d Cir. 1993) ("We have never recognized the need for severance based on the size of the trial"). Moreover, the Second Circuit "has repeatedly recognized that joint trials involving defendants who are only marginally involved alongside

those heavily involved are constitutionally permissible." Id. (citing United States v. Scarpa, 913 F.2d 993, 1014-15 (2d Cir. 1990) and Cervone, 907 F.2d at 341-42)

As noted above, the government must prove that Galietti misused a police computer in furtherance of the racketeering defendants' criminal activities. The racketeering defendants, in turn, are charged with bribing Trooper Galietti. Much of the evidence against Galietti is therefore "interconnected and overlapping" with evidence offered to prove the RICO counts. See United States v. Amato, 15 F.3d 230, 236 (2d Cir. 1994) (holding that a count alleging that the defendant had illegally possessed a gun should not be severed from counts alleging mob violence because evidence of mob warfare was relevant to prove that the defendant knowingly possessed a gun). The "interests of judicial efficiency" are therefore best "served by having the [defendants] tried together." See United States v. Blakney, 941 F.2d 114, 116 (2d Cir. 1991) (holding that severance of counts was not required under Rule 14); see also Polizzi v. United States, No. 88 Civ. 1631, 1990 WL 100891 at *13 (S.D.N.Y. July 13, 1990) (reasoning that the "public interest" mitigated against severance where joint trial avoided the need for "extensive repetitive testimony from many witnesses").

## CONCLUSION

For the foregoing reasons the defendant's Motion for Severance [Doc. No. 1089] is DENIED.


SO ORDERED

      /s/
ELLEN BREE BURNS
SENIOR U.S. DISTRICT JUDGE


Dated at New Haven, Connecticut this 30th day of October, 2007.